UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
UNITED STATES SECURITIES AND EXCHANGE
COMMISSION,

                                Plaintiff,                  **REPORT AND**
  -against-                                     **RECOMMENDATION**
                                                              99 CV 6050 (ARR) (JMA)

NOAH STEINBERG, GERSHON TANNENBAUM,
JAY VERMONTY,

                                Defendants,
and CARMEN VERMONTY,

                                Relief defendant.
------------------------------------------------------------------------X

A P P E A R A N C E S:

Carl A. Tibbetts, Esq.
U.S. Securities and Exchange Commission
100 F Street N.E.
Washington, DC 20549-4631
*Attorney for Plaintiff*

Stephen Hill, Esq.
41 Hilton Avenue
Hempstead, NY 11550
*Attorney for Defendants*

**AZRACK, United States Magistrate Judge**:

       In this action for enforcement of federal antifraud securities laws, Section 10(b) of the Securities Exchange Act of 1934 (hereinafter "Section 10(b)") and Rule 10b-5 promulgated thereunder, the Securities and Exchange Commission (hereinafter "SEC") moves for summary judgment against defendants Gershon Tannenbaum and Jay Vermonty and relief defendant Carmen Vermonty. Defendant Steinberg was never served and thus the SEC is not moving for summary judgment against him. As to defendants Tannenbaum and Vermonty, the SEC contends that no issue

exists for trial, as all material facts were resolved in a prior civil action and, therefore, defendants should be collaterally estopped from relitigating them. Defendants oppose this motion primarily on the ground that it would be unfair to apply collateral estoppel to this case.

By Order dated May 2, 2006, the Honorable Allyne R. Ross referred plaintiff's motion for summary judgment to me for a report and recommendation pursuant to 29 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I respectfully recommend that the SEC's motion for summary judgment be granted as to defendants Gershon Tannenbaum and Jay Vermonty. I respectfully recommend that the motion be denied as to relief defendant Carmen Vermonty. In addition, I respectfully recommend that the case against defendant Noah Steinberg be dismissed without prejudice.

## I. BACKGROUND

On January 11, 2000, the SEC filed an amended complaint charging Gershon Tannenbaum and Jay Vermonty[1] with fraudulent conduct in connection with a scheme to falsify and inflate the financial condition of two corporations, Power Phone, Inc. and its successor, TMC Agroworld Corp., in public filings with the SEC and in press releases disseminated to the investing public. (Am. Compl. ¶ 1.) It is not alleged that relief defendant, Carmen Vermonty, engaged in any federal securities law violations; rather, she is charged with holding funds that are fruits of the violations committed by her husband, defendant Jay Vermonty. (Am. Compl. ¶ 12.)

The amended complaint alleges a course of conduct that was alleged and proven in a

---

[1] The complaint also named Noah Steinberg and Enrique Reyes Carrion as defendants. Steinberg was never served. I therefore recommend that he be dismissed from the case. See infra Part II.C. Reyes Carrion was dismissed from the case by Judge Ross on August 22, 2005. (Dkt No. 95: Order granting Plaintiff's application to dismiss defendant Enrique Reyes Carrion.)

previous federal civil jury trial in Kansas brought by a private investor, Dave Sheldon. Sheldon v. Vermonty, No. 98 CV 2277 (JWL) (D. Kansas 2002) (hereinafter "Sheldon"). Sheldon was an investor in Power Phone and TMC Agroworld and, as such, was a victim of the defendants' fraud. Sheldon brought his action on June 19, 1998 alleging, *inter alia*, violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b). (Pl.'s Ex. Coll. Est. O: Sheldon Fourth Am. Compl. ¶ 43.)[2] Sheldon charged that Tannenbaum and Jay Vermonty,[3] assisted by his wife Carmen Vermonty, made numerous material misrepresentations and omissions regarding the assets, value, contracts, business operations, prospects, mergers and opportunities of Power Phone and TMC Agroworld. (Id.) These same facts form the basis of the allegations in the instant complaint. (See Pl.'s Mem. Supp. Mot. Summ. J. 2.) Following a jury trial in Sheldon, a verdict was reached against the defendants finding that Gershon Tannenbaum, Jay Vermonty, and Carmen Vermonty all violated Section 10(b). (Pl.'s Ex. Coll. Est. L: Sheldon Verdict Sheet 45.) Judgment was entered on September 20, 2002. (Pl.'s Ex. Coll. Est. N: Sheldon Judgment.)

The SEC has moved for summary judgment against all defendants arguing that collateral estoppel should be applied such that the Sheldon judgment precludes the defendants from relitigating the issues decided in Sheldon.

## II. DISCUSSION

---

[2] Citations to Sheldon court documents refer to Sheldon v. Vermonty, No. 98 CV 2277 (JWL) (D. Kansas 2002). Some of these documents were submitted by the SEC as exhibits to their collateral estoppel motion (hereinafter "Pl.'s Ex. Coll. Est."); this will be indicated where appropriate.

[3] Steinberg and others were also charged in the Sheldon complaint. Steinberg was dismissed from that case on August 29, 2002. (Sheldon Dkt. No. 305.)

3

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding whether there is a genuine issue of material fact, we must interpret all ambiguities and draw all factual inferences in favor of the nonmoving party. Ford v. McGinnis, 352 F.3d 582, 587 (2d Cir. 2003). In order to avoid summary judgment, however, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Summary judgment is appropriate, therefore, if the evidence presented by the nonmoving party "is merely colorable, or is not significantly probative," Anderson, 477 U.S. at 249-50 (citation omitted), or if it is based purely on "conjecture or surmise." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).

**A. Collateral Estoppel Should Be Applied as to Defendants Tannenbaum and J. Vermonty**

Here, defendants do not dispute that the facts found by the Sheldon jury would sustain summary judgment that they committed the federal securities law violations alleged by the SEC. Their argument, instead, is that the application of collateral estoppel in this case would be unfair.

The issue here is one of nonmutual offensive collateral estoppel,[4] a doctrine which was

---

[4] It is labeled nonmutual offensive collateral estoppel for the following reasons: "nonmutual" because plaintiff was not a party to the earlier action and "offensive" because the SEC seeks to establish, rather than defend against, certain principles. Park Properties Assocs., L.P. v. U.S., No. 04 1757C, 2006 WL 3347824, at *8 (Fed. Cl. Nov. 17, 2006).

4

approved by the Supreme Court in Parklane Hosiery Company, Inc. v. Shore, 439 U.S. 322, 331 (1979). This form of collateral estoppel arises "when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party." Id. at 326 n. 4. "The Supreme Court has explained that the doctrine has a dual purpose: (i) to protect litigants from the burden of relitigating an identical issue with the same party or his privy; and (ii) to promote judicial economy by preventing needless litigation." In re Ivan F. Boesky Securities Litigation, 848 F. Supp. 1119, 1122 (S.D.N.Y. 1994) (citing Parklane, 439 U.S. at 326).

In Parklane, the Supreme Court granted trial courts broad discretion to determine when this doctrine should be applied and stated the general rule as follows: "in cases where a plaintiff could easily have joined in the earlier action or where . . . the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel." Parklane at 331. The plaintiff in this action, the SEC, need not have joined in the earlier action in which a private investor was seeking to remedy personal harms, since "consolidation of a private action with one brought by the SEC without its consent is prohibited by statute." Parklane at 652 n. 17; see 15 U.S.C. § 78u(g).[5] Therefore, the issue is whether the application of collateral estoppel would be unfair.

Collateral estoppel generally precludes a party from relitigating in a second case issues "actually litigated and necessary to the outcome" in a prior case, even where the causes of action in

---

[5] 15 U.S.C. § 78u(g) states: "Notwithstanding the provisions of section 1407(a) of Title 28, or any other provision of law, no action for equitable relief instituted by the Commission pursuant to the securities laws shall be consolidated or coordinated with other actions not brought by the Commission, even though such other actions may involve common questions of fact, unless such consolidation is consented to by the Commission."

the two cases are different. Parklane at 327 n. 5. The Second Circuit has held that "federal law on collateral estoppel applies to determine the preclusive effect of a prior federal judgment." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002) (citing PRC Harris, Inc. v. Boeing Co., 700 F.2d 894, 896 n. 1 (2d Cir. 1983)). Under federal law, four prerequisites must be satisfied in order for collateral estoppel to apply: (1) the issues of both proceedings must be identical, (2) the relevant issues must have been actually litigated and decided in the prior proceeding, (3) there must have been a "full and fair opportunity" for the litigation of the issues in the prior proceeding, and (4) the issues must have been necessary to support a valid and final judgment on the merits. Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359, 368 (2d Cir. 1995).

The SEC has clearly shown three of these four prerequisites. (See Pl.'s Mem. Supp. Mot. Summ. J. 6-9.) As to the first requirement of identity of issues, defendants do not contest that the issues in the present case are identical to some of the issues decided in Sheldon; that is, whether Tannenbaum and J. Vermonty violated Section 10(b) and Rule 10b-5. "Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." Whelton v. Educational Credit Management Corp., 432 F.3d 150, 155 (2d Cir. 2005) (citing NLRB v. United Techs. Corp., 706 F.2d 1254, 1260 (2d Cir. 1983)). Here, both actions were brought for fraudulent misrepresentations and omissions regarding the same entities, Power Phone and TMC Agroworld. Moreover, the very misrepresented assets and business opportunities that were at issue in Sheldon are at issue here: Power Phone's claimed art and computer software assets and TMC Agroworld's claimed meat

processing plant, urea fertilizer and banana contracts. (Pl.'s 56.1 Statement ¶ 4.)[6] Because the misrepresentations and omissions in both cases relate to the same claims, assets, resources and actions of Power Phone and TMC Agroworld and their principals, much of the evidence presented to the jury in Sheldon is the same as what is presented here, including deposition and testimony transcripts and exhibits. (See Pl.'s Mem. Supp. Mot. Summ. J. 7.)

Moreover, these issues were actually litigated and decided in Sheldon, another point which defendants do not dispute. The jury in Sheldon was instructed on all the elements of Section 10(b) (see Pl.'s Ex. to Coll. Est. M: Sheldon Jury Instructions 12-20) and a verdict was returned in plaintiff's favor. That these issues were decided by a jury after trial demonstrates that they were actually litigated and decided. The issues were also clearly necessary to support a valid and final judgment on the merits.

The element of collateral estoppel that is at issue is whether the defendants had a "full and fair opportunity" to litigate the Sheldon case. This caveat of fairness is a well-settled exception to the application of collateral estoppel. See, e.g., S.E.C. v. Grotto, No. 05 CV 5880, 2006 WL 3025878, at *3 (S.D.N.Y. Oct. 24, 2006) (citing Parklane, 439 U.S. at 331).[7] Defendants contend

---

[6] References to "Pl.'s 56.1 Statement" refer to the SEC's Statement of Material Facts As To Which There is No Genuine Issue (Dkt. No. 104-3), which plaintiff submitted in support of its motion for summary judgment. Defendant submitted a memorandum and affidavit, but did not submit a corresponding Local Rule 56.1 statement as required. Local Rule 56.1(b). Subsection (b) of Local Rule 56.1 provides that: "The papers opposing a motion for summary judgment shall include a separate, short concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried." Id. Failure to respond accordingly to a moving party's 56.1 Statement generally means the material facts contained in the moving party's statement are deemed admitted. See Gubitosi v. Kapica, 154 F.3d 30, 31 n.1 (2d Cir. 1998).

[7] Depending on the collateral estoppel standard that is applied in a given case, some courts, like Grotto, address fairness as a separate inquiry; that is, one that must be considered

7

that they were not afforded such an opportunity because of their *pro se* status, alleged bias of the forum, failure to gain access to a deposition, improper conduct by Sheldon and his lawyer, and inability to effectively cross-examine witnesses. (Defs.' Aff. 5, 9.)[8] Under federal law, the party moving for the application of collateral estoppel bears the burden of demonstrating that the opposing party had a full and fair opportunity to litigate the issues. See, e.g., Flaherty v. Lang, 199 F.3d 607, 615 (2d Cir. 1999).

Parklane specifically suggests two situations which should be considered when making the "full and fair opportunity to litigate" inquiry. First, an argument against offensive collateral estoppel exists where a defendant has little incentive to litigate the relevant issue vigorously in the original action, particularly if the second action is not foreseeable. Parklane, 439 U.S. at 330; see also Restatement (Second) of Judgments § 28 cmt. i (1982) ("preclusion should not operate . . . if it was

---

after the four classic collateral estoppel prerequisites have been established. See, e.g., S.E.C. v. Grotto, No. 05 CV 5880, 2006 WL 3025878, at *3-4 (S.D.N.Y. Oct. 24, 2006). Other courts examine the question of fairness by asking whether the "full and fair opportunity to litigate" element has been met. See, e.g., Salahuddin v. Dalsheim, No. 94 CV 8730, 1996 WL 384898, at *8-9 (S.D.N.Y. July 9, 1996); see also, In re Southold Development Corp., 136 B.R. 40, 42 (E.D.N.Y. 1992) ("[W]hen the Supreme Court examined the issue of fairness in the application of collateral estoppel [in Parklane], the examples it gave of circumstances in which a court should use its discretion to bar the use of collateral estoppel all pertained to the parties' ability to fully and fairly litigate the issue in the first action."). I will address the argument using the latter methodology.

[8] Citations and references to Defendants' Affirmation refer to "Defendant's [*sic*] Affirmation and Memorandum of Points and Authorities in Opposition to the Motion of the Securities and Exchange Commission for Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure Based Upon Collateral Estoppel and Granting Permanent Injunctions, Accountings and Civil Penalties." (Dkt. No. 109.) It appears that there are pages missing from this document; however, after several attempts to contact defense counsel, this has not been rectified. Regardless, I have attempted to collect defendants' arguments. Since there are no page numbers on the electronically filed document, the page numbers cited to herein are the numbers assigned to the pages by the ECF (Electronic Case Filing) system.

unforeseeable when the first action was litigated that the issue would arise in the context of the second action, and if that lack of foreseeability may have contributed to the losing party's failure to litigate the issue fully"). This is not the situation here. During Sheldon, defendants Tannenbaum and J. Vermonty had ample incentive to litigate the claim. The complaint charged defendants with numerous federal, state, and common-law fraud violations and the defendants faced serious monetary judgments and penalties.

Moreover, this SEC action, alleging fraud based on the same facts, was foreseeable even before Sheldon was filed. In 1997 and 1998, the SEC took investigative testimony of the defendants under oath, which put them on notice that charges might be filed. (Pl.'s Mem. Supp. Mot. Summ. J. 11.) In fact, this action was filed on September 28, 1999 (Dkt. No. 1: Compl.), years before the filing of the Sheldon Revised Fourth Amended Complaint (Sheldon Dkt. No. 246) and years before the Sheldon trial (Sheldon Dkt. No. 331). Thus, well before the Sheldon trial, defendants had actual notice of the SEC charges and arguably an even greater incentive to present a strong defense in the Kansas case.

Parklane also "counsels courts to avoid applying 'offensive estoppel . . . where the second action affords the defendant procedural opportunities unavailable in the first action that would readily cause a different result' - a scenario that might arise if 'the defendant in the first action was forced to defend in an inconvenient forum and therefore was unable to engage in full scale discovery or call witnesses." S.E.C. v. Grotto, No. 05 CV 5880, 2006 WL 3025878, at * 4 (S.D.N.Y. Oct. 24, 2006) (quoting Parklane, 439 U.S. at 331, n. 15 and accompanying text). Defendants make a variety of arguments that are relevant here, but not persuasive.

Foremost, defendants argue that they did not have counsel during the trial phase of the

9

Sheldon case. Courts in the Second Circuit do look at whether or not a party was represented by competent counsel in the prior proceeding when deciding whether to invoke collateral estoppel. See, e.g., Ward v. Harte, 794 F. Supp. 109, 118 (S.D.N.Y. 1992) (noting that, when a party is represented at all times by counsel, any possible unfairness of the application of collateral estoppel is significantly mitigated). However, "lack of counsel in a prior proceeding by no means always prevents the application of collateral estoppel." Salahuddin v. Dalsheim, No. 94 CV 8730, 1996 WL 384898, at *8 (S.D.N.Y. July 9, 1996) (citing Mendoza v. SSC & B Lintas, 799 F. Supp. 1502, 1511 (S.D.N.Y. 1992)); see also Iwachiw v. N.Y.C. Bd. of Educ., 194 F. Supp. 2d 194, 202 (E.D.N.Y. 2002).

Although federal law of collateral estoppel governs this case, I also examined cases decided under New York law in determining whether defendants were provided with a full and fair opportunity to litigate in Sheldon. The standards used by courts applying federal law and New York law are very similar. See generally, Pike v. Freeman, 266 F.3d 78, 90 n. 14 (2d Cir. 2001); Mario Valente Collezione, Ltd. v. AAK Ltd., No. 02 Civ. 99, 2004 WL 724690, at *4 (S.D.N.Y. March 26, 2004); Aerogroup Int'l, Inc. v. Shoe Show, Inc., 966 F. Supp. 175, 180 n. 3 (W.D.N.Y. 1997) (noting that "the standards are essentially comparable"). New York courts have consistently held that to establish unfairness, parties must make a showing of more than just the fact that they appeared without counsel. For example, in Clark v. Dep't of Corr. Services, the plaintiff unsuccessfully requested or otherwise tried to secure counsel in the earlier proceedings. 564 F. Supp. 787, 789 (S.D.N.Y. 1983). In Salahuddin v. Dalsheim, discovery available to the plaintiff was severely limited and he did not have sufficient notice to prepare for the prior hearing. No. 94 CV 8730, 1996 WL 384898, at *8-9 (S.D.N.Y. July 9, 1996). In West v. Ruff, the litigant was notified

of the trial date only the day before it began.  961 F.2d 1064, 1065-66 (2d Cir. 1992).

The defendants' experience in <u>Sheldon</u> does not approach this kind of unfairness.  In <u>Sheldon</u>, the defendants were represented by Mario Aieta,[9] Jane Stafford, and Patrick Whalen, Esqs.,who litigated the case on their behalf until April 26, 2002, when their motions to withdraw were granted by Chief Judge Lungstrum.  (<u>Sheldon</u> Dkt. No. 268-69.)  Defendants assert that they did not have sufficient "funds for new counsel" and were "thereby compelled to proceed to trial on a *pro se* basis." (Defs.' Aff. 5, 7.)  Although defendants make this assertion now, the <u>Sheldon</u> record reflects that neither moved for additional time to retain new counsel, nor did they move to have replacement counsel appointed.  (<u>See</u> <u>Sheldon</u> Docket Sheet.)  Thus, defendants were not *compelled* to proceed to trial *pro se*, they chose to do so.  Moreover, it is worth noting that, in the instant case, with no explanation of a change in financial situation and a large money judgment hanging over them as a result of <u>Sheldon</u> (Defs.' Aff.  12), defendants appear with retained counsel.  There is no inference here that defendants were denied a full and fair opportunity to litigate in <u>Sheldon</u>.

Defendants also argue that "their prior counsel was refused admission *pro hac vice* to try the case." (Defs.' Aff. 5).  This is refuted by the <u>Sheldon</u> record, which demonstrates that Aieta was admitted *pro hac vice* on September 15, 1998.  (<u>Sheldon</u> Dkt. No. 13.)  There is no indication that any attorneys were denied admission *pro hac vice*.  (<u>See</u> <u>Sheldon</u> Dkt. Sheet.)

Until Chief Judge Lungstrum permitted defendants' attorneys to withdraw, the defendants were represented by competent, fully engaged counsel.  Pretrial discovery was completed by Aieta and he participated in depositions.  (<u>See</u>, <u>e.g.</u>, Pl.'s Ex. to Admissions vol. 2 Ex. 14 at 4.)  In

---

[9] Defendants were also represented by Aieta in this SEC action until April 12, 2002 when I granted his motion to withdraw.  (<u>See</u> Dkt. No. 27-1.)

addition, defendants engaged in extensive motion practice while represented by Aieta. (See, e.g., Sheldon Dkt. Nos. 8, 52, 74, 129, 146, 152, 177, 179, 230.) During this time, defendants also submitted witness and exhibit lists for trial (Sheldon Dkt. No. 151) and objected to plaintiff's offering of the same (Sheldon Dkt. Nos. 172, 173). They also answered the Fourth Amended Complaint. (Sheldon Dkt. No. 191.)

Even after their counsel withdrew from the case, the defendants fully participated in the pretrial litigation. Motion practice continued while the defendants appeared *pro se* and they made both substantive and procedural motions. (Sheldon Dkt. Nos. 276, 277, 281, 282, 291, 292, 295-99, 309, 311.) Defendants also submitted trial witness and exhibit lists as well as proposed *voir dire* questions and jury instructions. (Sheldon Dkt. Nos. 310, 317-19.)

Moreover, defendants had ample time to prepare for their trial and they presented a coordinated and coherent defense. Defendant Tannenbaum opened to the jury on behalf of himself and Jay Vermonty. (Pl.'s Ex. to Coll. Est. R: Excerpts of Transcript of Sheldon trial at 121.) Tannenbaum also made objections and participated in sidebar conferences. (See, e.g., id. at 142, 160, 161, 198, 212, 230, 232, 280.) The record also reflects that both Tannenbaum and Vermonty conducted cross-examination of witnesses and utilized exhibits. (Id. at 323, 343, 344, 398, 399.) In addition, the trial transcript reflects that defendants gave closing statements as well as made a Rule 50 motion. (Id. at 439-40.) Although defendants did not call any witnesses, they did read into evidence the deposition testimony of one witness. (Id. at 440.)

Such representation is enough to satisfy the requirement of a full and fair opportunity to litigate. See, e.g., In re West, 339 B.R. 557, 569-70 (Bankr. E.D.N.Y. 2006) (collateral estoppel appropriate under New York law even though defendant appeared *pro se* at trial because defendant

had the assistance of counsel during pre-trial discovery, there was a fully contested trial presided over by a District Court judge and the defendant was present throughout the trial, cross examined the plaintiffs' witnesses, and took the stand to testify on his own behalf). Courts in this circuit have applied collateral estoppel with a much lower showing of participation. See, e.g., S.E.C. v. Grotto, No. 05 CV 5880, 2006 WL 3025878, at *2 (S.D.N.Y. Oct. 24, 2006) (full and fair opportunity to litigate found when defendants did not even appear at trial, although they received notice).

Defendants also argue that they were prejudiced by the Kansas forum. However, "[t]hey offer no evidence that they were . . . subjected to the kind of procedural prejudice - inability 'to engage in full scale discovery or call witnesses' - that [in Parklane] concerned the Supreme Court in its footnote to an otherwise broadened approach to estoppel." S.E.C. v. Grotto, No. 05 CV 5880, 2006 WL 3025878, at *4 (S.D.N.Y. Oct. 24, 2006) (citing Parklane, 439 U.S. at 331 n. 15). Defendants' claim that "a full dress Hasidic Rabbi and his second seater, a Puerto Rican" did not obtain a fair trial because plaintiff was "an all American mid-westerner" is baseless. (Defs.' Aff. 5.) Likewise, there is no evidence whatsoever that "constant clashing between the judge and Rabbi Tannenbaum" occurred or had any negative effect on the defendants' ability to litigate their case. (Id.) Defendants further claim that they did not get a fair trial in Sheldon because the "spectre [*sic*] of [missing co-defendants] Noah Steinberg and Enrique Reyes Carrion loomed large." (Id.) This argument is similarly unavailing.

Defendants' complaints reflect issues that any litigant must deal with during trial; they are not an indication that defendants were deprived of a full and fair opportunity to litigate. Rather, these arguments "concern trial matters that fall within the discretion of the district court," Sheldon

13

v. Vermonty, 107 Fed. App'x 828, 831 (10th Cir. 2004),[10] and do not provide sufficient basis to deny the application of collateral estoppel. Moreover, these same arguments were made on appeal to the Tenth Circuit, which summarily rejected each one. Id. Specifically, the defendants argue they were treated unfairly regarding issues including the admission and exclusion of evidence, enforcement of procedural provisions of the pretrial order, handling of alleged juror misconduct, and maintenance of courtroom decorum.[11] Already rejected by the Tenth Circuit, these arguments are similarly unavailing here.

The present inquiry is whether defendants had a full and fair *opportunity* to litigate the issue of whether or not they violated Section 10(b). Although one could argue that defendants did not fully avail themselves of that opportunity by appearing at the Sheldon trial without counsel, they certainly had the opportunity to do so. Their counsel withdrew with the Court's approval and defendants did not attempt to retain new counsel, nor did they move to have new counsel appointed. Instead, they chose to proceed to trial *pro se*, where they fully participated in the proceedings. Furthermore, the Tenth Circuit affirmed the Sheldon judgment. Sheldon v. Vermonty, 107 Fed. App'x 828, 831 (10th Cir. 2004). See, e.g., In re Ivan Boesky Sec. Lit., 848 F. Supp. 1119, 1124 n. 2 (S.D.N.Y. 1994) (noting that the "full and fair opportunity" test was "clearly established by the

---

[10] The Tenth Circuit rules state that "[u]npublished orders and judgments of this court are not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel," for which this opinion is here utilized. Tenth Circuit R. 36.3(A).

[11] Some of these allegations are also expressed in a verified complaint against David Sheldon and Darren Kearns, Esq., his attorney, which was submitted by the defendants with their motion papers. (Dkt. No. 109 at 14-23.) Although the complaint contains a caption indicating that it was prepared for the Supreme Court of the State of New York, County of Queens, there is no indication (official stamp, index number or otherwise) that it was actually filed. Whether or not the complaint has been filed, it is irrelevant to this action.

14

Second Circuit's affirmance" of the previous action). Defendants had their full and fair opportunity to litigate these issues in Kansas at the <u>Sheldon</u> trial; there is simply no reason to give them another bite at the proverbial apple.

**B. Collateral Estoppel Should Not be Applied as to Relief Defendant C. Vermonty**

The issue in this case regarding relief defendant Carmen Vermonty is whether or not she was unjustly enriched by the proceeds of her husband's illegality. That issue was neither litigated nor decided in the <u>Sheldon</u> trial. In <u>Sheldon</u>, the jury found that Carmen Vermonty violated Section 10(b) and other state and common laws. In this case, the SEC has not alleged that she violated any of these laws. The only issue is that of unjust enrichment, which was not an issue in the <u>Sheldon</u> case. Therefore, collateral estoppel is not appropriate and summary judgment as to Carmen Vermonty should be denied.

**C. Defendant Steinberg Should be Dismissed from the Case Without Prejudice**

As a final matter, I recommend that defendant Noah Steinberg be dismissed from this case without prejudice. The Supreme Court has long recognized the "inherent power" of district courts to dismiss cases *sua sponte* for want of prosecution. <u>Link v. Wabash R. Co.</u>, 370 U.S. 626, 630 (1962). This matter was filed on September 28, 1999; it is now more than seven years later and Steinberg has not been served. In general, Fed. R. Civ. P. 4(m) governs the time limit for service. This Rule states that "[i]f service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant." Fed. R. Civ. P. 4(m).

According to the SEC, Steinberg now resides in Israel, a foreign country, where the SEC

15

admittedly has not attempted service. Therefore, Rule 4(f), which governs service upon individuals in foreign countries, may apply. Rule 4(m) creates an exception for "service in a foreign country pursuant to subdivision (f)," which sets forth procedures for such service. See Fed. R. Civ. P. 4(f). However, "[t]his exception does not apply if, as here, the plaintiff did not attempt to serve the defendant in the foreign country." USHA (India), Ltd. v. Honeywell Intern., Inc., 421 F.3d 129, 133-34 (2d Cir. 2005) (citations omitted). Thus, Rule 4(m) applies and dismissal without prejudice is appropriate.

### III. CONCLUSION

For the above stated reasons, I respectfully recommend that plaintiff's motion for summary judgment be granted in part and denied in part. Summary judgment should be awarded to the SEC as to defendants Tannenbaum and Jay Vermonty, but not relief defendant Carmen Vermonty. In addition, I recommend that the case against defendant Noah Steinberg be dismissed without prejudice.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: Brooklyn, New York
      March 1, 2007

                                              /s/
                                             Joan M. Azrack
                                             United States Magistrate Judge